**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
           :

AURELIUS CAPITAL MASTER, LTD.;
ACP MASTER, LTD.; NOVORIVER S.A.;
683 CAPITAL PARTNERS, LP; ADONA LLC;
EGOZ I LLC; EGOZ II LLC; MASTERGEN,
LLC; ERYTHRINA, LLC; AP 2016 1, LLC;
AP 2014 3A, LLC; AP 2014 2, LLC; WASO
HOLDING CORPORATION; APE GROUP SPA;
ROMANO CONSULTING SPA; ICARO SRL;
and ELAZAR ROMANO,

               Plaintiffs,

            - against -

THE REPUBLIC OF ARGENTINA,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.:  1:26-cv-00337 (LAP)

The Honorable Loretta A. Preska

**ORAL ARGUMENT**
**REQUESTED**

**DEFENDANT THE REPUBLIC OF ARGENTINA'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for the Republic of Argentina*

March 16, 2026

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................3

    A.    The GDP-Linked Securities ...............................................................................3

    B.    The Court's Dismissal of the Prior Actions ......................................................4

    C.    Plaintiffs' September 2024 Action and This Action ..........................................5

STANDARD OF REVIEW .................................................................................................6

ARGUMENT ....................................................................................................................6

I.    PLAINTIFFS CANNOT RELY ON C.P.L.R. § 205(a) TO ASSERT TIME-BARRED REPRESENTATIVE CLAIMS ....................................................................6

    A.    Claims of Holders Not Party to the Dismissed Actions Are Time-Barred .............6

    B.    Plaintiffs Cannot Rely on C.P.L.R. § 205(a) To Try to Revive Other Holders' Time-Barred Claims ...................................................................................10

II.    PLAINTIFFS STILL HAVE NOT COMPLIED WITH THE NO-ACTION CLAUSE ...................................................................................................................12

    A.    Plaintiffs' July 25, 2024 Request Did Not Satisfy the No-Action Clause .............13

    B.    Plaintiffs' November 12, 2025 Request Did Not Satisfy the No-Action Clause ....................................................................................................................13

III.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED COMPLIANCE WITH OTHER THRESHOLD REQUIREMENTS FOR BRINGING THEIR CLAIMS ....................................................................................................................15

    A.    Plaintiffs Do Not Plead that They Possess the Right to Bring Their Latest Claims ..................................................................................................................15

    B.    The Prescription Clause Bars Most of WASO's Claims ...................................17

CONCLUSION ...............................................................................................................18

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*ACE Sec. Corp.* v. *DB Structured Prods., Inc.*,
38 N.Y.3d 643 (2022) ............................................................................................11, 14

*Allstate Ins. Co.* v. *Longwell*,
735 F. Supp. 1187 (S.D.N.Y. 1990)........................................................................14, 15

*Ape Group SPA* v. *Rep. of Argentina*,
2022 WL 463309 (S.D.N.Y. Feb. 15, 2022)..............................................................9, 17, 18

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)..............................................................................................6

*Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*,
2020 WL 70348 (S.D.N.Y. Jan. 7, 2020) ...............................................................4

*Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*,
2021 WL 1177465 (S.D.N.Y. Mar. 29, 2021) .........................................................4

*Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*,
2024 WL 1367960 (S.D.N.Y. Mar. 31, 2024) .........................................................1, 3, 4

*Azeem* v. *Colonial Assurance Co.*,
468 N.Y.S.2d 248 (N.Y. App. Div. 1983) ...............................................................15

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)..............................................................................................6

*In re Bennett Funding Grp., Inc. Sec. Litig.*,
194 F.R.D. 98 (S.D.N.Y. 2000) .............................................................................8

*BlackRock Balanced Cap. Portfolio (FI)* v. *Deutsche Bank Nat'l Tr. Co.*,
2018 WL 5619957 (S.D.N.Y. Aug. 7, 2018)............................................................16

*Breitman* v. *Xerox Educ. Servs., LLC*,
2013 WL 5420532 (S.D.N.Y. Sept. 27, 2013).........................................................16

*Craft EM CLO 2006-1, Ltd.* v. *Deutsche Bank AG*,
117 N.Y.S.3d 2 (N.Y. App. Div. 2019) ...................................................................10, 11

*Diesel Props S.r.l.* v. *Greystone Bus. Credit II LLC*,
631 F.3d 42 (2d Cir. 2011).....................................................................................18

*Dyno-Bite, Inc.* v. *Travelers Cos.*,
439 N.Y.S.2d 558 (N.Y. App. Div. 1981) ...................................................................15

*Feldbaum* v. *McCrory Corp.*,
1992 WL 119095 (Del. Ch. June 2, 1992)................................................................14

*H.P.S. Capitol, Inc.* v. *Mobil Oil Corp.*,
588 N.Y.S.2d 29 (N.Y. App. Div. 1992) ...................................................................9

*John J. Kassner & Co.* v. *City of New York*,
389 N.E.2d 99 (N.Y. 1979)......................................................................................9

*Jones* v. *Bill*,
10 N.Y.3d 550 (2008) ...............................................................................................7

*Levy* v. *BASF Metals Ltd.*,
2017 WL 2533501 (S.D.N.Y. June 9, 2017) .............................................................6

*Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*,
585 F. Supp. 3d 540 (S.D.N.Y. 2022)...........................................................15, 16, 18

*Quadrant Structured Prods. Co.* v. *Vertin*,
23 N.Y.3d 549 (2014) ...............................................................................................14

*Racepoint Partners LLC* v. *JPMorgan Chase Bank*,
2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006)...........................................................17

*Reliance Ins. Co.* v. *PolyVision Corp.*,
9 N.Y.3d 52 (2007) ...................................................................................................10

*Rex Med. L.P.* v. *Angiotech Pharms. (US), Inc.*,
754 F. Supp. 2d 616 (S.D.N.Y. 2010).......................................................................14

*Royal Park Invs. SA/NV* v. *HSBC Bank USA, N.A.*,
2018 WL 679495 (S.D.N.Y. Feb. 1, 2018)...............................................................16

*Royal Park Invs. SA/NV* v. *Wells Fargo Bank, N.A.*,
2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ...............................................................2

*Semi-Tech Litig., LLC* v. *Bankers Tr. Co.*,
272 F. Supp. 2d 319 (S.D.N.Y. 2003)........................................................................17

*Shak* v. *JPMorgan Chase & Co.*,
156 F. Supp. 3d 462 (S.D.N.Y. 2016).........................................................................7

*U.S. Bank Nat. Ass'n* v. *Barclays Bank PLC*,
2013 WL 1180414 (S.D.N.Y. Mar. 12, 2013) ...........................................................10

*U.S. Bank Nat'l Ass'n* v. *GreenPoint Mortg. Funding, Inc.*,
    45 N.Y.S.3d 11 (N.Y. App. Div. 2016) ................................................................18

*Warth* v. *Seldin*,
    422 U.S. 490 (1975) .............................................................................................9

*Windham Solid Waste Mgmt. Dist.* v. *Nat'l Cas. Co.*,
    146 F.3d 131 (2d Cir. 1998) ..............................................................................8, 9

*Zimmerman* v. *Poly Prep Country Day Sch.*,
    888 F. Supp. 2d 317 (E.D.N.Y. 2012) .................................................................7

**Statutes**

C.P.L.R. § 205(a) .............................................................................................. *passim*

C.P.L.R. § 213(2) ..................................................................................................7, 14

N.Y. Gen. Oblig. Law § 13-107 ..............................................................................17

**PRELIMINARY STATEMENT**

This case marks Plaintiffs' latest attempt to try to obtain payments for calendar year 2013 under the Republic's dollar-denominated GDP-linked securities (the "Securities"). Plaintiffs—sophisticated hedge funds and other institutional investors—acquired the Securities with litigation in mind but bypassed the Securities' "No-Action Clause" and pursued individualized recoveries for their own benefit when they first sued in 2019 and 2020 (the "Dismissed Actions"). This Court correctly dismissed those actions for failure to comply with the No-Action Clause. *Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 2024 WL 1367960, at *12 (S.D.N.Y. Mar. 31, 2024) (Preska, J.) ("*Aurelius III*"). The Second Circuit affirmed this Court's dismissal, rejecting Plaintiffs' challenge to its reading of the contractual language. 2025 WL 1949968, at *4 (2d Cir. July 16, 2025).

Now—long after the expiration of the governing limitations periods—Plaintiffs try to transform their failed individual suits into a sweeping representative action. Plaintiffs seek $1.3 billion on behalf of all holders of the Securities, the vast majority of whom never sued, much less asserted any right to payment under the Securities. To justify this maneuver, Plaintiffs invoke C.P.L.R. § 205(a), a savings provision that permits a plaintiff who timely commenced an action to refile their claims within six months after termination. Because C.P.L.R. § 205(a) does not permit a plaintiff to use a refiled action to assert new claims on behalf of nonparties whose claims expired long ago, this Court should dismiss the Complaint with prejudice.

*First*, Plaintiffs cannot use C.P.L.R. § 205(a) to bring untimely representative claims on behalf of new claimants. In the Dismissed Actions, Plaintiffs sought money damages based on their own beneficial holdings in the Securities—not for the equal, ratable, and common benefit of all holders. By contrast, Plaintiffs' new Complaint pursues the claims of all holders for

the full 2013 payment amount, allegedly over $1.3 billion.  (Compl. Prayer for Relief ¶ (b).)  But no one—not the Plaintiffs, the other holders on whose behalf Plaintiffs now purport to sue, or the Trustee—ever asserted such "all-holder" claims within the five-year prescription period in Section 14 of the Global Security or brought suit on such claims within New York's six-year statute of limitations.  By its terms, C.P.L.R. § 205(a) preserves only the claims of "the plaintiff" who "timely commenced" an action to re-assert claims.  Plaintiffs may not invoke this statute to bring time-barred claims belonging to others.

*Second*, Plaintiffs still have not satisfied the No-Action Clause.  Section 11 of the Global Security permits a lawsuit only after holders representing at least 25 percent of the outstanding Securities demand in writing that the Trustee bring an action in its own name, provide indemnity, and give the Trustee 60 days to act.  Plaintiffs allege that they satisfied these requirements with requests to the Trustee in July 2024 and November 2025.  (Compl. ¶¶ 55–56.)  By that time, however, a suit for a 2013 payment was long time-barred.  Plaintiffs' belated demand that the Trustee bring a time-barred suit does not satisfy Section 11's requirement that the Trustee be afforded the opportunity to "institute such action" on behalf of all holders "in its own name as Trustee." (Compl. Ex. C § 11 at R-13.)

*Third*, Plaintiffs do not adequately plead that they possess the litigation rights to assert these claims.  *See Royal Park Invs. SA/NV* v. *Wells Fargo Bank, N.A.*, 2018 WL 739580, at *14 (S.D.N.Y. Jan. 10, 2018) (Netburn, J.).  In addition, Plaintiff WASO Holding Corporation ("WASO") acquired hundreds of millions of dollars in Securities only after the contractual prescription period had already expired.

# BACKGROUND

## A.    The GDP-Linked Securities

As part of its 2005 and 2010 debt exchanges, Argentina issued GDP-linked securities.  The Securities are governed by a Trust Indenture and the Global Security that sets forth their specific terms.  *See Aurelius III*, 2024 WL 1367960, at *2–3.[1]  The Securities provide for contingent "Payment Amounts" for a given Reference Year only if specified GDP-related conditions are satisfied and subject to a contractual cap.  (Compl. Ex. C § 2(b) at R-5, R-6.)

The governing documents strictly limit any beneficial owner's right to sue.[2] Section 11 of the Global Security—the "No-Action Clause"—bars individual suits except for claims for "principal" and "interest."  (Compl. Ex. C § 11 at R-13; Compl. Ex. B § 4.9 at 25.)  All other actions first must be channeled through the Trustee.  Specifically, before any beneficial owner may "institute any suit, action or proceeding," holders of at least 25 percent of the outstanding Securities must give written notice of default to the Trustee and make a written request that the Trustee bring suit in its own name, provide indemnity satisfactory to the Trustee, and allow the Trustee 60 days to act, provided no inconsistent direction is given by a majority of holders. (Compl. Ex. C § 11 at R-13.)  If the Trustee elects not to file suit, the holder who made the request

---

[1]    There are separate 2005 and 2010 Global Securities with "materially identical" terms. *Aurelius III*, 2024 WL 1367960, at *3.  References in this brief are to the 2005 Global Security, which is attached to the Complaint as Exhibit C.

[2]    Plaintiffs allege that they are "beneficial owners" of the Securities but also refer to themselves at various points as "holders" or "Holders."  (Compl. ¶¶ 30, 64–66, 172.)  References in this brief to the term "holder" or "Holder" do not suggest that Plaintiffs are "Holders" as defined in the Global Security and/or the Indenture, and Plaintiffs acknowledge that they are not.  (*Id.* ¶ 30.)

can bring an action, but only "for the equal, ratable and common benefit of all Holders," not for an individual holder's separate recovery.  (*Id*.)

**B.      The Court's Dismissal of the Prior Actions**

In January 2019, Aurelius filed suit on its own behalf alleging that the Republic breached the Global Security by failing to make a payment for Reference Year 2013.  *See Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 19-cv-0351, ECF No. 1.  Other investors filed copycat complaints on their own behalf.[3]  On January 7, 2020, this Court dismissed the *Aurelius* complaint. *Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 2020 WL 70348, at *6–8 (S.D.N.Y. Jan. 7, 2020) (Preska, J.) ("*Aurelius I*").  Aurelius and the other plaintiffs then filed amended complaints, which survived a motion to dismiss.  *Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 2021 WL 1177465, at *12 (S.D.N.Y. Mar. 29, 2021) (Preska, J.) ("*Aurelius II*").

On March 31, 2024, this Court granted summary judgment to the Republic because Plaintiffs did not comply with the No-Action Clause, which generally bars individual lawsuits. *Aurelius III*, 2024 WL 1367960, at *7.  The Court rejected Plaintiffs' effort to end-run the No-Action Clause by suing individually under Section 4.9 of the Indenture, which "creates an individual right of action as applied to payments for principal of and interest on a stated maturity date."  *Id.* at *11–12.  After consulting the dictionary definitions of "principal" and "interest," the Court held that "under their natural and ordinary meanings" those terms do not encompass the contingent payments under the Global Security that Plaintiffs claimed they were owed.  *Id.* at *11.

---

[3]      *ACP Master, Ltd.* v. *Rep. of Argentina*, 19-cv-10109; *Novoriver S.A.* v. *The Argentine Rep.*, 19-cv-09786; *683 Capital Partners, LP* v. *Rep. of Argentina*, 19-cv-10131; *Adona LLC, et al.* v. *Rep. of Argentina*, 19-cv-11338; *Ape Group SPA, et al.* v. *Rep. of Argentina*, 20-cv-10409.

The Second Circuit affirmed, holding that "the terms of the securities bar suits by holders unless the holders (1) comply with the notice provisions"—including "giv[ing] notice to the Trustee"—or "(2) file suit to recover principal or interest." *Aurelius*, 2025 WL 1949968, at *2, *4. Because "[i]t is undisputed that the plaintiffs did not comply with the notice provisions . . . before filing suit in this case" and "the contingent payments allegedly due to holders . . . do not constitute principal or interest," the Second Circuit held that "the No-Action Clause of the Global Security bars this suit." *Id.* at *2–4.

### C. Plaintiffs' September 2024 Action and This Action

On September 25, 2024, while their appeal of this Court's judgment was pending, Plaintiffs filed a new complaint, invoking C.P.L.R. § 205(a) to try to get around the fact that the statute of limitations for claims for a 2013 payment had expired. For the first time, Plaintiffs sought payment on behalf of all other holders of the Securities and "alternatively" sought payment for Reference Year 2013 on their own behalf. *See Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 24-cv-7247, ECF No. 1, ¶ 20.

The Republic moved to dismiss the September 2024 action on a number of grounds, including that C.P.L.R. § 205(a) was not available because the prior actions (then on appeal) were not yet "terminated," as required by the statute. The parties thereafter stipulated to dismiss the September 2024 action pending the resolution of Plaintiffs' appeal. (Compl. Ex. A at 2.)

In their latest Complaint, Plaintiffs purport to seek payment for Reference Year 2013 on behalf of all holders, "including without limitation" Plaintiffs themselves, as well as other unspecified damages for all holders. (Compl. ¶ 24; *see id*. Prayer for Relief, ¶¶ (b)–(c).) Plaintiffs also claim to have now "complied" with the No-Action Clause with written requests sent to the Trustee on July 25, 2024 and November 12, 2025. (Compl. ¶¶ 55–56.)

## STANDARD OF REVIEW

To survive this motion to dismiss under Rule 12(b)(6), Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). This Court should grant dismissal when, as here, the "complaint clearly shows the claim is out of time." *Levy* v. *BASF Metals Ltd.*, 2017 WL 2533501, at *4 (S.D.N.Y. June 9, 2017) (Woods, J.), *aff'd*, 917 F.3d 106 (2d Cir. 2019).

## ARGUMENT

## I.    PLAINTIFFS CANNOT RELY ON C.P.L.R. § 205(a) TO ASSERT TIME-BARRED REPRESENTATIVE CLAIMS.

The No-Action Clause permits suit, if at all, only for the "equal, ratable and common benefit of all Holders." (Compl. Ex. C § 11 at R-13.) Having lost their prior suits because they elected not to comply with that provision, Plaintiffs now try to circumvent the No-Action Clause's express bar on individualized claims by recasting this case as a purportedly representative action seeking recovery of the entire alleged 2013 Payment Amount on behalf of *all* beneficial holders of the Securities. (Compl. Prayer for Relief ¶ (b).) But Plaintiffs cannot bring a claim on behalf of holders that have never sued. Because those claims were not raised in a timely action, they are time-barred. (*Infra* Section A.) C.P.L.R. § 205(a) saves only the claims of a plaintiff who timely commenced the prior action. It does not authorize that plaintiff to add untimely claims belonging to others. (*Infra* Section B.)

### A.    Claims of Holders Not Party to the Dismissed Actions Are Time-Barred.

Plaintiffs' theory is that payment is owed for Reference Year 2013. (Compl. ¶ 7.) Any such payment would have been due on December 15, 2014. (Compl. ¶ 61.) Accordingly,

under New York's statute of limitations, any action seeking payment for Reference Year 2013 had to be "commenced within six years," C.P.L.R. § 213(2), and a claim for such payment had to be "made" even sooner, within the Securities' five-year prescription period. (*see* Compl. Ex. C § 14 at R-14). Plaintiffs' new claims on behalf of all holders do not satisfy either of these requirements.

*First*, compliance with a statute of limitations is assessed on a plaintiff-by-plaintiff basis. *See Shak* v. *JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 475 (S.D.N.Y. 2016) (Engelmayer, J.) (assessing the timeliness of each plaintiff's claims individually); *Zimmerman* v. *Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 340 n.10 (E.D.N.Y. 2012) ("[e]ach plaintiff . . . faces an individual limitations period"). If Plaintiffs wished to assert claims on behalf of other holders of the Securities, as they now purport to do, they had to file that action within six years of the December 15, 2014 alleged payment date, *i.e.*, *by December 15, 2020*.

No action was commenced by anyone on behalf of all holders by December 15, 2020. Under New York law, an action is "commenced" by "filing a summons and complaint or summons with notice." *Jones* v. *Bill*, 10 N.Y.3d 550, 554 (2008) (quoting C.P.L.R. § 304(a)). The Dismissed Actions sought recovery only for the named plaintiffs' own beneficial holdings.[4] They did not purport to assert claims on behalf of all holders, nor could they have. When the Dismissed Actions were filed, Plaintiffs had not complied with the No-Action Clause's prerequisites for

---

[4]    *See* Ex. M (Aurelius Capital Master Compl.), Prayer for Relief ¶ (a) (seeking "damages equal to $83,729,993"); Ex. N (ACP Master Compl.), Prayer for Relief ¶ (a) (seeking "damages equal to $159,077,777"); Ex. P (Novoriver Compl.), Prayer for Relief ¶ A (seeking "[c]ompensatory damages to Plaintiff according to proof"); Ex. Q (683 Capital Partners Compl.), Prayer for Relief ¶ (a) (seeking "damages equal to USD $37,947,421); Ex. R (Adona Compl.), Prayer for Relief ¶ 1 (seeking an order "awarding Plaintiffs damages in an amount to be determined at trial for their holdings of the GDP Warrants"); *Ape Group SPA, et al.* v. *Rep. of Argentina*, 20-cv-10409, ECF No. 1, Demand for Relief ¶ A (seeking an order "[a]warding Plaintiffs the Payment Amounts due to them").

bringing a representative action.  The nonparty holders on whose behalf Plaintiffs now purport to sue likewise never commenced a timely action of their own.  Accordingly, the representative claims Plaintiffs now assert—and the claims of the nonparty holders they now seek to represent— are barred by the six-year statute of limitations.  *See In re Bennett Funding Grp., Inc. Sec. Litig.*, 194 F.R.D. 98, 99-100 (S.D.N.Y. 2000) (Sprizzo, J.) (denying leave to amend to add "class allegations on behalf of Bennett investors who have never filed suit . . . because those claims not currently before the Court are clearly barred by the applicable statute of limitations" and "[i]n these circumstances, particularly in light of defendant's interest in repose from actions commenced subsequent to the running of the statute of limitations, this Court cannot entertain a class action on plaintiffs' behalf").

*Second*, Plaintiffs' claims are independently barred by the Prescription Clause, a contractual limitations period providing that:  "*All claims* against the Republic *for any amounts due hereunder* . . . shall be prescribed unless made within five years from the date on which such payment first became due, or a shorter period if provided by law."  (Compl. Ex. C § 14 at R-14 (emphasis added).)  Under this provision, any holder seeking payment for Reference Year 2013 was required to "ma[k]e" a "claim" *by December 15, 2019*.

Plaintiffs say that the Prescription Clause was satisfied for *all* holders because they provided "timely notice" of the "total" Payment Amount.  (Compl. ¶¶ 62–68.)  That is wrong: the Prescription Clause requires that all "*claims* against the Republic" be "*made* within five years"— not merely that one holder give notice of the total amount allegedly due to all other holders beyond the amount that holder individually demands.  (Compl. Ex. C § 14 at R-14 (emphasis added).)  A "claim" refers to a specific demand for relief.  *Windham Solid Waste Mgmt. Dist.* v. *Nat'l Cas. Co.*, 146 F.3d 131, 133–34 (2d Cir. 1998) (explaining that a "claim" is "a demand for specific

relief owed because of alleged wrongdoing").  Indeed, this Court previously held that the Prescription Clause's use of the word "claim" means "the assertion of a right to payment" by a "security holder."  *Ape Group SPA* v. *Rep. of Argentina*, 2022 WL 463309, at *2–3 (S.D.N.Y. Feb. 15, 2022) (Preska, J.) (explaining that a security holder "must 'make' a 'claim' for amounts due within five years; if she does not, then the 'claim' is prescribed").  Each holder therefore must individually assert his or her own right to payment.  *See Warth* v. *Seldin*, 422 U.S. 490, 499 (1975) (a plaintiff "generally must assert his own legal rights and interests").

In the Dismissed Actions, only the named Plaintiffs asserted a right to payment under the Securities.  Plaintiffs invoke a September 25, 2017 letter from Aurelius Capital Management (Compl. ¶ 62) that sought approximately $68.6 million only for the "Aurelius-Managed Funds," not for all holders. (Compl. Ex. L at 1.)  And the complaints from the Dismissed Actions, now cited by Plaintiffs (Compl. ¶¶ 63–66), specifically sought relief only for each named plaintiff's own beneficial holdings, not for the claims of any other holder, much less for the equal and ratable benefit of all holders.  (*See supra* n.4.)  By their terms, these holders' letter and complaints seeking recovery on their behalf alone did not "ma[k]e" a "claim" on behalf of others who took no action.  (Compl. Ex. C § 14 at R-14.)

Plaintiffs' misreading of the Prescription Clause defeats the purpose of that provision—to provide finality and "repose."  *H.P.S. Capitol, Inc.* v. *Mobil Oil Corp.*, 588 N.Y.S.2d 29, 30 (N.Y. App. Div. 1992); *John J. Kassner & Co.* v. *City of New York*, 389 N.E.2d 99, 103 (1979) (agreement to shorten statute of limitations protects against "stale claims" and "giv[es] repose to human affairs").  Under Plaintiffs' misreading, a single holder could preserve the claims of every other holder by simply giving "notice of the total Payment Amount due" (Compl. ¶ 68), even if those other holders never took any action of their own (to "ma[k]e" a "claim").  That

misreading would deprive the Republic of the finality and repose that it bargained for.  The Court should reject Plaintiffs' misreading of the Prescription Clause, which "would significantly undermine—if not completely frustrate—[its] purpose."  *U.S. Bank Nat. Ass'n* v. *Barclays Bank PLC*, 2013 WL 1180414, at *6 (S.D.N.Y. Mar. 12, 2013) (Pauley III, J.).

**B.      Plaintiffs Cannot Rely on C.P.L.R. § 205(a) To Try to Revive Other Holders' Time-Barred Claims.**

By invoking C.P.L.R. § 205(a), Plaintiffs cannot salvage their untimely claims on behalf of other holders.  That provision (1) only authorizes claims by "the plaintiff" in the original action, and (2) does not permit new claims (whether direct or, as here, representative) on behalf of new parties.  Specifically, the statute provides that:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, ***the plaintiff*** . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

*Id.* (emphasis added).

The New York Court of Appeals has made clear that the words "the plaintiff" in Section 205(a) encompass only "the original plaintiff."  *Reliance Ins. Co.* v. *PolyVision Corp.*, 9 N.Y.3d 52, 57 (2007).  A more expansive reading would, as that court explained, improperly "breathe life into otherwise stale claims."  *Id.* at 57–58 (affirming dismissal under C.P.L.R. § 205(a) of claim on behalf of entity related to original plaintiff); *see also Craft EM CLO 2006-1, Ltd.* v. *Deutsche Bank AG*, 117 N.Y.S.3d 2, 4 (N.Y. App. Div. 2019) ("plaintiff, who originally

timely sued . . . could not rely on CPLR 205(a) when it refiled the suit as assignee of the trustee's claims, which were time-barred").

The New York Court of Appeals' decision in *ACE Securities Corp.* v. *DB Structured Products, Inc.* confirms that Section 205(a) cannot save time-barred claims belonging to others. There, two certificate holders filed a timely action expressly as a derivative action on behalf of the trust—*i.e.*, for the benefit of all certificate holders—but did not comply with the "no-action clause." *ACE Securities Corp.* v. *DB Structured Products, Inc.*, 38 N.Y.3d 643, 649–50 & n.1 (2022). After their claims were dismissed, the trustee brought a new action seeking to "revive" the claims under Section 205(a). *Id*. at 650.

The Court of Appeals rejected that tactic. Even though the trustee was pursuing the identical claims on behalf of the same trust, the Court of Appeals held that, because the trustee was not "'the plaintiff' in the prior action," the trustee could not avail itself of Section 205(a). *Id.* at 655. Construing "the plaintiff" to include a party that did not bring the prior action could not be squared with Section 205(a)'s terms. *See id.* at 652–53. The Court of Appeals emphasized that Section 205(a) serves only to "insure to the diligent suitor" the opportunity to have a claim "heard on the merits," provided that the suitor has "initiated a suit in time." *Id.* at 655. Allowing the trustee to assert the certificate holders' claims would instead "protect the rights of a *dilatory*—not diligent—suitor." *Id.*

If Section 205(a) could not save the trustee's action in *ACE*—where the second action asserted the identical claims, on behalf of identical beneficiaries, as the first—it cannot save Plaintiffs' new, representative claims here. In the Dismissed Actions, Plaintiffs sought recovery only for their own beneficial holdings. (*See supra* n.4.) They did not file an action for the benefit of all holders as Plaintiffs now try to do. Plaintiffs are also seeking the entire alleged 2013 Payment

-11-

Amount—over $1.3 billion—on behalf of all holders of the Securities (Compl. Prayer for Relief ¶ (b)), the vast majority of whom did not commence timely actions on their own.

As in *ACE*, Section 205(a) does not allow Plaintiffs to "breath[e] life into" the expired claims of nonparty holders.  38 N.Y.3d at 654.  Section 205(a) protects "the diligent suitor" who "initiated a suit in time"—but Plaintiffs are "dilatory" suitors and cannot rely on Section 205(a) to bring nonparty holders' expired claims that Plaintiffs never timely asserted in the first place*.  Id*. at 655.

## II.    PLAINTIFFS STILL HAVE NOT COMPLIED WITH THE NO-ACTION CLAUSE.

Even if Plaintiffs could bring time-barred claims on behalf of additional holders— and they cannot—Plaintiffs still have not satisfied the No-Action Clause.  Section 11 of the Global Security channels enforcement through the Trustee.  As the Second Circuit explained, the Global Security "generally prohibits lawsuits" by holders unless they comply with the No-Action Clause's prerequisites.  *Aurelius*, 2025 WL 1949968, at *1–2.  Those prerequisites require holders representing at least 25 percent of the outstanding Securities to request in writing that the Trustee bring suit in its own name, provide indemnity satisfactory to the Trustee, and allow the Trustee 60 days to act.  (Compl. Ex. C § 11 at R-13.)  Without following these steps, "no Holder of a Security *shall have any right* by virtue of or by availing itself of any provision of the Indenture, the GDP-Linked Securities Authorization or the Securities *to institute any suit, action or proceeding*."  (*Id.* (emphasis added).)

It was "undisputed" that Plaintiffs failed to comply with these requirements in advance of filing the Dismissed Actions.  *Aurelius*, 2025 WL 1949968, at *2.  Plaintiffs now contend that they have cured that defect through written requests sent to the Trustee on July 25,

2024 and November 12, 2025—years *after* the underlying claims accrued and long *after* the contractual and statutory limitations periods expired.  (Compl. ¶¶ 55–56.)  Neither request satisfies Section 11.

**A.    Plaintiffs' July 25, 2024 Request Did Not Satisfy the No-Action Clause.**

To try to establish compliance with the No-Action Clause, Plaintiffs invoke a written request sent to the Trustee on July 25, 2024.  (Compl. ¶ 55.)  That request asked the Trustee to commence an action under C.P.L.R. § 205(a) by September 27, 2024.  (Compl. Ex. J at 2.)  When the Trustee did not do so, Plaintiffs filed a Section 205(a) action themselves, which they later agreed to dismiss.  (Compl. Ex. A at 2.)

But Plaintiffs' July 25, 2024 request cannot satisfy the No-Action Clause for purposes of *this* case.  Section 11 requires that the Trustee be given an opportunity to "institute" the "suit, action or proceeding" that the holder ultimately seeks to pursue "in its own name as Trustee under the Indenture."  (Compl. Ex. C § 11 at R-13.)  The July 2024 request did not demand that the Trustee file this action; instead, it demanded that the Trustee file the September 2024 action that Plaintiffs later withdrew.  The July 2024 request therefore did not—and could not— satisfy the No-Action Clause's requirements with respect to *this* action.[5]

**B.    Plaintiffs' November 12, 2025 Request Did Not Satisfy the No-Action Clause.**

That leaves Plaintiffs' November 12, 2025 request.  (Compl. Ex. K.)  This request also did not satisfy the No-Action Clause for two reasons.

---

[5]    Even if the July 2024 request could be used to justify this action, that request still would not satisfy the No-Action Clause because, as explained in Section II.B, the request impermissibly demanded that the Trustee bring untimely claims.

*First*, this request demanded that the Trustee institute an action that it was legally unable to bring.  By November 2025 any new claim for Reference Year 2013 was barred by the five-year Prescription Clause and New York's six-year statute of limitations.  (*See* Compl. Ex. C § 14 at R-14; C.P.L.R. § 213(2).)  Because the Trustee was not a plaintiff in the Dismissed Actions, the Trustee could not invoke C.P.L.R. § 205(a) to pursue claims that were already time-barred. *See ACE Sec. Corp.*, 38 N.Y.3d at 655.  As a result, by November 2025 the Trustee could no longer "institute such action . . . *in its own name as Trustee*" for the payment allegedly owed to all holders for Reference Year 2013.  (Compl. Ex. C § 11 at R-13 (emphasis added).)

*Second*, accepting Plaintiffs' theory would impermissibly frustrate the purpose of the No-Action Clause.  *See Rex Med. L.P.* v. *Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010) (McMahon, J.) ("[P]arties are not free to interpret a contract in a way that frustrates the purpose of that contract or that makes any provision of the contract meaningless."). The "primary purpose" of no-action clauses is to "centralize enforcement powers" in the trustee and to prevent minority holders from pursuing litigation without sufficient support.  *See Feldbaum* v. *McCrory Corp.*, 1992 WL 119095 (Del. Ch. June 2, 1992), at *6 n.11; *see also Quadrant Structured Prods. Co.* v. *Vertin*, 23 N.Y.3d 549, 565 (2014) ("[A] no-action clause prevents minority securityholders from pursuing litigation against the issuer, in favor of a single action initiated by a Trustee upon request of a majority of the securityholders.").  That purpose would be frustrated if, as Plaintiffs seek to do here, holders could "comply" years after claims expired by belatedly asking the Trustee to bring untimely claims it cannot legally assert and then proceeding on their own when the Trustee (necessarily) declined to act on that demand.

Courts have rejected other efforts to satisfy contractual preconditions after the opportunity to comply has passed.  In *Allstate Ins. Co.* v. *Longwell*, for example, an insurance

policyholder violated his cooperation obligations by refusing to answer certain questions under oath. 735 F. Supp. 1187, 1189 (S.D.N.Y. 1990) (Conboy, J.). Although the policyholder offered belatedly to answer the questions, the court upheld the insurer's denial of coverage. *Id.* As the court explained, a "tardy" attempt to cure the contractual breach was no cure at all, because "too much time elapsed, defeating the purpose of the cooperation clause." *Id.* at 1193, 1195.

Here too, Plaintiffs cannot satisfy the No-Action Clause seven years too late, when "too much time elapsed, defeating the purpose of" the No-Action Clause. *Id.* at 1195; *see also Azeem* v. *Colonial Assurance Co.*, 468 N.Y.S.2d 248, 250 (N.Y. App. Div. 1983) ("Plaintiff's proffered willingness to submit to an examination under oath almost a year and a half after the examination was first scheduled and over two years after the fire does not satisfy his contractual obligation of co-operation."); *Dyno-Bite, Inc.* v. *Travelers Cos.*, 439 N.Y.S.2d 558, 561 (N.Y. App. Div. 1981) ("promises of evidence to be supplied in some indefinite future" do not satisfy cooperation obligation under insurance policy). Plaintiffs' latest effort to try to comply with the No-Action Clause represents another empty gesture because they never gave the Trustee the opportunity to pursue litigation on behalf of all holders.

## III.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED COMPLIANCE WITH OTHER THRESHOLD REQUIREMENTS FOR BRINGING THEIR CLAIMS.

The Complaint also suffers from two additional defects: Plaintiffs have not pled that they own the litigation rights of their Securities (Section III.A), and the Global Security's Prescription Clause bars the majority of WASO's claims (Section III.B).

### A.   Plaintiffs Do Not Plead that They Possess the Right to Bring Their Latest Claims.

To bring their latest claims, Plaintiffs must "demonstrate their standing to sue for claims related to each [Security]." *Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*, 585 F.

Supp. 3d 540, 565 (S.D.N.Y. 2022) (Koeltl, J.). Breach of contract claims accrue "at the time of the breach." *Breitman* v. *Xerox Educ. Servs., LLC*, 2013 WL 5420532, at *5 (S.D.N.Y. Sept. 27, 2013) (Crotty, J.). Here, the alleged breach occurred, and the right to litigate that alleged breach accrued, on December 15, 2014, the Payment Date for Reference Year 2013. (*See* Compl. ¶ 61.)

To adequately plead the right to bring their claims, Plaintiffs must allege that (i) they either owned the Securities as of December 15, 2014, or (ii) the right to sue was either expressly assigned or automatically transferred from each previous holder of the Securities on which they now purport to sue, dating back to December 15, 2014. *See Royal Park Invs. SA/NV* v. *HSBC Bank USA, N.A.*, 2018 WL 679495, at *4 (S.D.N.Y. Feb. 1, 2018) (Schofield, J.) (holding that a "[bond]holder has standing to sue only if every prior transaction in the chain included an assignment of the right to sue along with the underlying [bond]"); *BlackRock Balanced Cap. Portfolio (FI)* v. *Deutsche Bank Nat'l Tr. Co.*, 2018 WL 5619957, at *11 (S.D.N.Y. Aug. 7, 2018) (Netburn, J.) (explaining that "the Court must [] engage in an individualized inquiry to learn who retained the litigation rights for each security").

Plaintiffs satisfy neither requirement. The Complaint does not allege that Plaintiffs held the Securities as of December 15, 2014, or that they thereafter validly acquired the litigation rights for the Securities they now hold. At most, Plaintiffs allege that they are the current beneficial owners of the Securities (which has nothing to do with litigation rights).

Some of the Plaintiffs allege that their management companies were located in New York at the time they purchased the Securities. (Compl. ¶¶ 31–32, 34, 36–37, 40–43.) But these allegations do not sufficiently plead that these Plaintiffs' acquisitions of their Securities were governed by New York law and could benefit from New York's automatic transfer statute. *See*

N.Y. Gen. Oblig. Law § 13-107 (providing a default rule that a transfer of a bond also transfers claims or demands of the transferrer).

A plaintiff seeking the benefit of New York's automatic transfer statute must show that all the underlying sales were governed by New York law. *See Semi-Tech Litig., LLC* v. *Bankers Tr. Co.*, 272 F. Supp. 2d 319, 330 (S.D.N.Y. 2003) (Kaplan, J.) (the "question [of whether § 13-107 applies to contracts for the sale of securities] is controlled, as to each sale, by New York choice of law principles"). Accordingly, courts have held that a plaintiff must "allege facts to show that New York law governed *every prior transfer* of the notes at issue in this case, such that their transferrers would have automatically acquired the claims of all the previous noteholders." *Racepoint Partners, LLC* v. *JPMorgan Chase Bank*, 2006 WL 3044416, at *5 (S.D.N.Y. Oct. 26, 2006) (Cedarbaum, J.) (emphasis added). The Complaint here contains no such allegations. Because Plaintiffs fail to plead ownership of the relevant litigation rights as of the accrual date— or a valid chain of assignment thereafter—their claims must be dismissed.

**B.    The Prescription Clause Bars Most of WASO's Claims.**

The lion's share of WASO's claims are untimely under the Prescription Clause, which "prescribes the Republic's obligation" to pay claims for Reference Year 2013 "where the security holder fail[ed] to assert a right to payment" by December 15, 2019—*i.e.*, within five years of when the claims purportedly arose. *Ape Group*, 2022 WL 463309, at *3.

WASO first sued on December 11, 2019, based on holdings of a notional amount of $152,975,000 of the Securities. *Adona*, 19-cv-11338, Pls.' Dec. 14, 2020 Ltr., ECF No. 23 at 2. In 2020—*months after* the five-year prescription period expired on December 15, 2019 for Reference Year 2013—WASO bought an additional $557,750,000 of the Securities, increasing its total notional holdings to $710,725,000. *Id.*

The claims based on these additional Securities were already time-barred under the Prescription Clause when WASO acquired them. Time-barred claims do not transfer with the sale of a security. *Diesel Props S.r.l.* v. *Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) ("[A]n assignee stands in the shoes of its assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment.").

Nor can WASO's claims based on the later-acquired Securities "relate back" to its initial complaint raising the earlier-acquired Securities. The relation back doctrine does not apply where, as here, "a contractual condition precedent to asserting a claim"—*i.e.*, the satisfaction of the Prescription Clause—was not met before the claim was asserted. *See Phoenix Light*, 585 F. Supp. 3d at 568; *see also U.S. Bank Nat'l Ass'n* v. *GreenPoint Mortg. Funding, Inc.*, 45 N.Y.S.3d 11, 17 (N.Y. App. Div. 2016) (permitting relation back in such circumstances would "simply eviscerate the condition precedent"). Because WASO did not timely make any claim for the "amounts due" associated with approximately 80 percent of its Securities within the five-year prescription period, the Prescription Clause bars those claims.[6]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

---

[6]    The claims of Plaintiffs Ape Group SpA, Romano Consulting SpA, Icaro SRL, and Elazar Romano (the "Ape Group Plaintiffs") are also untimely under the Prescription Clause. The Ape Group Plaintiffs did not file a lawsuit within the five-year prescription period. While this Court previously held that the Ape Group Plaintiffs satisfied the Prescription Clause through correspondence with the Republic's counsel, *Ape Group*, 2022 WL 463309, at *3, the Republic respectfully submits, for preservation purposes, that the Ape Group Plaintiffs did not properly assert their claims within the contractual five-year period.

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

*Counsel for the Republic of Argentina*

March 16, 2026

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this memorandum of law contains 5,790 words in compliance with Local Civil Rule 7.1(c) and Rule 2.B of the Individual Practices of the Honorable Judge Loretta A. Preska.

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.