UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                    :

| | |
|---|---|
| AURELIUS CAPITAL MASTER, LTD.; ACP MASTER, LTD.; NOVORIVER S.A.; 683 CAPITAL PARTNERS, LP; ADONA LLC; EGOZ I LLC; EGOZ II LLC; MASTERGEN, LLC; ERYTHRINA, LLC; AP 2016 1, LLC; AP 2014 3A, LLC; AP 2014 2, LLC; WASO HOLDING CORPORATION; APE GROUP SPA; ROMANO CONSULTING SPA; ICARO SRL; and ELAZAR ROMANO, | No. 1:26-cv-00337 (LAP)<br><br>Hon. Loretta A. Preska<br><br>**ORAL ARGUMENT REQUESTED** |

                Plaintiffs,  :

       - against -    :

THE REPUBLIC OF ARGENTINA,  :

              Defendant.  :

-------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS

FRIEDMAN KAPLAN SEILER
  ADELMAN & ROBBINS LLP

Edward A. Friedman
Daniel B. Rapport
Jeffrey C. Fourmaux
Michael S. Palmieri
7 Times Square
New York, New York 10036
(212) 833-1100

*Attorneys for Plaintiffs Aurelius Capital Master, Ltd. and ACP Master, Ltd.*

April 20, 2026               *[Additional counsel listed on following page]*

4899-1839-9651.1

BLEICHMAR FONTI & AULD LLP

Javier Bleichmar
Evan A. Kubota
300 Park Avenue, Suite 1301
New York, New York 10022
(212) 789-1340

*Attorneys for Plaintiff Novoriver S.A.*

LATHAM & WATKINS LLP

Matthew S. Salerno
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for Plaintiffs Adona LLC; Egoz I
LLC; Egoz II LLC; Mastergen, LLC;
Erythrina, LLC; AP 2016 1, LLC; AP 2014
3A, LLC; AP 2014 2, LLC; and WASO
Holding Corporation*

PERKINS COIE LLP

Matthew M. Riccardi
H. Rowan Gaither IV
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
(212) 262-6900

*Attorneys for Plaintiff 683 Capital Partners,
LP*

LAW OFFICES OF ERIC J. GRANNIS

Eric J. Grannis
11 Broadway, Suite 615
New York, New York 10004
(212) 903-1025

*Attorneys for Plaintiffs Ape Group SpA;
Romano Consulting SpA; Icaro SRL;
and Elazar Romano*

4899-1839-9651.1

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

GLOSSARY OF DEFINED TERMS AND ABBREVIATIONS ................................................. vi

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ........................................................................................................... 3

    A.    Argentina Fails to Pay the Payment Amount for 2013. ............................ 3

    B.    Plaintiffs Timely Satisfy the Prescription Clause
        and File the Prior Actions. ....................................................................... 3

    C.    Plaintiffs Comply with the No-Action Clause. ......................................... 4

    D.    Plaintiffs Timely Commence and Serve this Action ................................. 5

ARGUMENT ................................................................................................................ 5

I.    UNDER THE PLAIN LANGUAGE OF THE CONTRACT AND CPLR 205(a),
    PLAINTIFFS HAVE THE RIGHT TO BRING THIS ACTION NOW. ............................ 5

    A.    The Securities' Plain Terms Expressly Authorize Plaintiffs
        as Beneficial Owners to Enforce Argentina's Obligations. ...................... 5

    B.    Under the Plain Language of CPLR 205(a), this Action Is Timely. ........... 6

    C.    Compliance with the No-Action Clause Can Be and Was
        Timely Cured After the Limitations Period, Because
        the NAC Is Only A Procedural Condition Precedent to Suit. .................... 10

    D.    Plaintiffs "Made" "Claims" for the Full Payment Amount Within the
        Prescription Period, as this Court Has Construed Those Plain Terms. ....... 11

II.    ARGENTINA'S ARGUMENTS ARE CONTRARY TO
    THE TERMS OF THE CONTRACT AND CPLR 205(a). ......................................... 12

    A.    Plaintiffs Are Timely Asserting Their Own Claims,
        Not the Claims of Other Beneficial Owners. ........................................... 12

        1.    The timeliness of other beneficial owners' claims is irrelevant. ....... 12

        2.    As this Court has construed the Prescription Clause, "making"
            a "claim" does not require a "specific demand for relief." ............... 15

i

3.      As an alternative remedy, Plaintiffs may recover at least the portion  of the Payment Amount or damages related to their beneficial interests. ...................................................................16

B.      The No-Action Clause Does Not Require that the Trustee Receive a Request to Sue Within the Limitations Period. .....................................17

C.      Argentina's Other "Threshold" Arguments Fail. ......................................................19

1.      No assignment of claims is necessary because the contract "expressly acknowledges the right of any beneficial owner" to sue. ........19

2.      The Prescription Clause does not bar any relief sought by WASO. ...........21

CONCLUSION ...................................................................................................................22

CERTIFICATE OF COMPLIANCE .................................................................................25

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
    25 N.Y.3d 581 (2015) ................................................................................................17, 20

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
    38 N.Y.3d 643 (2022) ...............................................................................................................14

*Allstate Ins. Co. v. Longwell*,
    735 F. Supp. 1187 (S.D.N.Y. 1990).........................................................................................18

*Azeem v. Colonial Assurance Co.*,
    96 A.D.2d 123 (4th Dep't 1983).............................................................................................18

*Baker v. Latham Sparrowbrush Assocs.*,
    808 F. Supp. 981 (S.D.N.Y. 1992) ...........................................................................................9

*BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*,
    2018 WL 5619957 (S.D.N.Y. Aug. 7, 2018)...............................................................................20

*Breitman v. Xerox Educ. Servs., LLC*,
    2013 WL 5420532 (S.D.N.Y. Sept. 27, 2013)..........................................................................20

*Caffaro v. Trayna*,
    35 N.Y.2d 245 (1974) ...............................................................................................................9

*Carrick v. Cent. Gen. Hosp.*,
    51 N.Y.2d 242 (1980) .............................................................................................................10

*Craft EM CLO 2006-1 Ltd. v. Deutsche Bank AG*,
    178 A.D.3d 552 (1st Dep't 2019) ...........................................................................................14

*Dorchester Financial Sec. Inc. v. Banco BRJ, S.A.*
    2014 WL 684831 (S.D.N.Y. Feb. 21, 2014) ...........................................................................8

*Dyno-Bite, Inc. v. Travelers Cos.*,
    80 A.D.2d 471 (4th Dep't 1981)..............................................................................................18

*Gaines v. City of N.Y.*,
    215 N.Y. 533 (1915) (Cardozo, J.) ..........................................................................................7

*Genova v. Madani*,
    283 A.D.2d 860 (3d Dep't 2001) .............................................................................................9

4899-1839-9651.1

*Hakala v. Deutsche Bank AG*,
   343 F.3d 111 (2d Cir. 2003)................................................................................6

*Harris v. U.S. Liab. Ins. Co.*,
   746 F.2d 152 (2d Cir. 1984).......................................................................8, 9, 16

*In re Bennett Funding Grp., Inc. Sec. Litig.*,
   194 F.R.D. 98 (S.D.N.Y. 2000) ........................................................................14

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   568 F. Supp. 2d 376 (S.D.N.Y. 2008)...............................................................10

*Kemper Ins. Cos. v. United States*,
   2004 WL 1811390 (W.D.N.Y. Aug. 13, 2004) .................................................21

*Lazar v. Mor*,
   235 A.D.3d 408 (1st Dep't 2025) ........................................................................9

*Matter of Trusts Established under the Pooling & Servicing Agreements
   Relating to the Wachovia Bank Com. Mortg. Tr. Com. Mortg.
   Pass-Through Certificates, Series 2007-C30*,
   375 F. Supp. 3d 441 (S.D.N.Y. 2019)...........................................................18, 19

*Morris Invrs., Inc. v. Comm'r of Fin. of City of N.Y.*,
   69 N.Y. 2d 933 (1987) ...................................................................................6, 10

*O'Halloran v. Met. Transp. Auth.*,
   154 A.D.3d 83 (1st Dep't 2017) .........................................................................9

*Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*,
   585 F. Supp. 3d 540 (S.D.N.Y. 2022)................................................................20

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
   23 N.Y.3d 549 (2014) ........................................................................17, 18, 20

*R.A. Mackie & Co. v. Petrocorp Inc.*,
   329 F. Supp. 2d 477 (S.D.N.Y. 2004)................................................................20

*Racepoint Partners LLC v. JPMorgan Chase Bank*,
   2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006) ...................................................20

*Randolph v. Fox*,
   230 A.D.3d 1173 (2d Dep't 2024) .......................................................................9

*Reliance Ins. Co. v. PolyVision Corp.*,
   9 N.Y.3d 52 (2007) ............................................................................................14

iv

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
    754 F. Supp. 2d 616 (S.D.N.Y. 2010)..................................................................................18

*Royal Park Inv. SA/NV v. Wells Fargo Bank, N.A.*,
    2018 WL 679495 (S.D.N.Y. Feb. 1, 2018)..........................................................................20

*Semi-Tech Litig., LLC v. Bankers Tr. Co.*,
    272 F. Supp. 2d 319 (S.D.N.Y. 2003)..................................................................................20

*Tanges v. Heidelberg N. Am., Inc.*,
    93 N.Y.2d 48 (1999) ............................................................................................................13

*U.S. Bank, N.A. v. Barclays Bank PLC*,
    2013 WL 1180414 (S.D.N.Y. Mar. 12, 2013) .....................................................................18

*U.S. Bank, N.A. v. DLJ Mortg. Cap., Inc.*,
    33 N.Y.3d 72 (2019) ...................................................................................................2, 10, 11

*Utica Sheet Metal Corp. v. Myers-Laine Corp.*,
    45 A.D.2d 116 (3d Dep't 1974) .............................................................................................9

*Vt. Teddy Bear Co. v. 538 Madison Realty Co.*,
    1 N.Y.3d 470 (2004) ............................................................................................................17

*Warth v. Seldin*,
    422 U.S. 490 (1975)..............................................................................................................16

*Windham Solid Waste Mgmt. Dist. v. Nat'l Cas Co.*,
    146 F.3d 131 (2d Cir. 1998)..................................................................................................15

**Statutes**

CPLR 203(f)...............................................................................................................................9

CPLR 205(a) ...................................................................................................................... *passim*

CPLR 213(2)...............................................................................................................................7

UCC § 8-302.............................................................................................................................20

**Rules**

FED. R. CIV. P. 8.......................................................................................................................10

Fed. R. Civ. P. 15(a) ................................................................................................................14

FED. R. CIV. P. 54(c)................................................................................................................10

v

## GLOSSARY OF DEFINED TERMS AND ABBREVIATIONS

Capitalized terms not otherwise defined in this Glossary shall have the meanings ascribed to them in the Global Securities.

"**¶ _**" means paragraph __ of the Complaint, Dkt. No. 1.

"**2005 Securities**" means the 2005-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: US040114GM64) issued by the Republic.

"**2005 Global Security**" means the 2005 Form of Registered Global Security, applicable to the 2005 Securities only, a copy of which is attached as Exhibit C to the Complaint.

"**2010 Securities**" means the 2010-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: XS0501197262) issued by the Republic.

"**2010 Global Security**" means the 2010 Form of Registered Global Security, applicable to the 2010 Securities only, a copy of which is attached as Exhibit E to the Complaint.

"*Ape Group*" means *Ape Group SPA v. Republic of Argentina*, 2022 WL 463309 (S.D.N.Y. Feb. 15, 2022).

"**Acknowledgement Provision**" means the last sentence of each of Indenture § 4.8, 2005 Global Security ¶ 11, and 2010 Global Security ¶ 9.

"**Argentina**" and the "**Republic**" mean defendant the Republic of Argentina.

"*Aurelius I*" means *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 2020 WL 70348 (S.D.N.Y. Jan. 7, 2020).

"*Aurelius II*" means *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 2021 WL 1177465 (S.D.N.Y. Mar. 29, 2021).

"*Aurelius III*" means *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 728 F. Supp. 3d 274 (S.D.N.Y. 2024).

"*Aurelius IV*" means *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 2025 WL 1949968 (2d Cir. July 16, 2025).

"**Ex. _**" means Exhibit _ attached to the Complaint.

"**Global Securities**" means the 2005 Global Security and the 2010 Global Security, collectively.

"**Indenture**" means the Trust Indenture, dated June 2, 2005, by and between Trustee and the Republic, a copy of which is attached as Exhibit B to the Complaint.

"**Modifications Provision**" means 2005 Global Security ¶ 22 and 2010 Global Security ¶ 20.

"**NAC**" or "**No-Action Clause**" means the no-action clause contained in each of Indenture § 4.8, 2005 Global Security ¶ 11, and 2010 Global Security ¶ 9.

"**Plaintiffs**" means plaintiffs Aurelius Capital Master, Ltd.; ACP Master, Ltd.; Novoriver S.A.; 683 Capital Partners, LP; Adona LLC; Egoz I LLC; Egoz II LLC; Mastergen, LLC; Erythrina, LLC; AP 2016 1, LLC; AP 2014 3A, LLC; AP 2014 2, LLC; WASO Holding Corporation; Ape Group SpA; Romano Consulting SpA; Icaro SRL; and Elazar Romano.

"**Prescription Clause**" means 2005 Global Security ¶ 14 and 2010 Global Security ¶ 12.

"**Prior Actions**" means, collectively, the following actions that were coordinated before this Court: (i) *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 19 Civ. 351 (LAP) (S.D.N.Y.); (ii) *Novoriver S.A. v. Argentine Republic*, No. 19 Civ. 9786 (LAP) (S.D.N.Y.); (iii) *ACP Master, Ltd. v. Republic of Argentina*, No. 19 Civ. 10109 (LAP) (S.D.N.Y.); (iv) *683 Capital Partners, LP v. Republic of Argentina*, No. 19 Civ. 10131 (LAP) (S.D.N.Y.); (v) *Adona LLC, et al. v. Republic of Argentina*, No. 19 Civ. 11338 (LAP) (S.D.N.Y.); and (vi) *Ape Group SPA, Romano Consulting SPA, Icaro SRL, and Elazar Romano v. Republic of Argentina*, No. 20 Civ. 10409 (LAP) (S.D.N.Y.).

"**RB __**" means page __ of Defendant The Republic of Argentina's Memorandum of Law in Support of Its Motion to Dismiss the Complaint, Dkt. No. 18.

"**Romano Plaintiffs**" means plaintiffs Ape Group SpA; Romano Consulting SpA; Icaro SRL; and Elazar Romano.

"**Securities**" means, collectively, the 2005 Securities and the 2010 Securities.

"**Stipulation**" means the Stipulation and Order entered at Docket No. 24 in *Aurelius Capital Master Ltd. v. Republic of Argentina*, No. 24 Civ. 7247 (LAP) (S.D.N.Y.), a copy of which is attached as Exhibit A to the Complaint.

"**Trustee**" means The Bank of New York Mellon, solely in its capacity as Trustee under the Indenture.

"***Trustee's Post-2013 Action***" means *Aurelius Capital Master, Ltd., et al. v. Republic of Argentina*, 2025 WL 2774108 (S.D.N.Y. Sept. 29, 2025).

4899-1839-9651.1

**PRELIMINARY STATEMENT**

Argentina does not dispute that Plaintiffs had the right when the Prior Actions were commenced to bring suit for the Payment Amount upon satisfaction of the No-Action Clause (the "**NAC**").  Nor does it deny that if Plaintiffs had brought the current suit when the Prior Actions were commenced, the current suit would have been timely.  On Argentina's urging, this Court terminated the Prior Actions because the NAC had not been satisfied yet.  CPLR 205(a) permits Plaintiffs to remedy that non-merits defect and bring a new suit upon "the same transaction or occurrence" within six months of the Prior Actions' termination, and they have done so.

Argentina now moves to dismiss on grounds that defy the plain language of the statute and the contract.

*First*, Argentina contends the current suit fails CPLR 205(a)'s same-plaintiff requirement and does not enjoy the tolling the statute provides, because (says Argentina) Plaintiffs are pursuing time-barred claims belonging to others.  Plaintiffs, however, have not changed, and, as in the Prior Actions, they are pursuing their own remedies under the same contract for the same contractual breaches by Argentina—including, but not limited to, its failure to pay the Payment Amount due for 2013.  In so doing, Plaintiffs are proceeding in accord with Argentina's view, accepted by the Court, that a beneficial owner can *only* sue under the NAC.  Argentina's characterization of the current suit as a "representative" action is contrary to the contract's language and, in all events, irrelevant because *Plaintiffs are pursuing their own contractual remedies, the same remedies they have always had under the NAC.*  All that matters is whether the NAC has been timely satisfied; it has, because CPLR 205(a) tolls the time to satisfy such a procedural condition precedent to suit.

*Second*, in an attempt to relitigate this Court's *Ape Group* holding, Argentina contends no "claim" for the full Payment Amount for all holders was "made" during the Securities' prescription period, because it did not receive a "specific demand for relief" for the full Payment Amount. But as this Court ruled, a "claim" is "made" within the Prescription Clause's plain meaning when a "right to payment" is "asserted." That happened within the prescription period, when Plaintiffs repeatedly notified Argentina it owed the full Payment Amount.

*Third*, Argentina contends the NAC was not satisfied here because the Trustee received the requests to sue after the limitations period had expired. But no such timing requirement appears in the clause. And it is well-settled that "a suit may be refiled pursuant to CPLR 205(a) despite a plaintiff's failure to comply with a condition precedent prior to the expiration of the statute of limitations." *U.S. Bank, N.A. v. DLJ Mortg. Cap., Inc.*, 33 N.Y.3d 72, 80 (2019).

All of Argentina's timeliness challenges could have been obviated if it had raised the NAC in its two motions to dismiss the Prior Actions. The NAC could have been satisfied during the limitations period and there would have been no issues about timeliness, parties, or the measure of relief. After belatedly raising the defense, Argentina cannot object when the NAC has now been satisfied and Plaintiffs seek relief consistent with it, as permitted by CPLR 205(a).

*Fourth*, Argentina argues Plaintiffs have no right to sue unless they received assignments of claims from prior beneficial owners. That argument too ignores the Securities' plain terms, which "expressly acknowledge[] the right of *any* beneficial owner"—without limitation—to pursue a Holder's remedies.

4899-1839-9651.1

## BACKGROUND

The Court has recently summarized the history of this litigation, *see Trustee's Post-2013 Action*, 2025 WL 2774108, at *1-5, and Plaintiffs recite only the facts relevant to Argentina's current arguments.

### A.    Argentina Fails to Pay the Payment Amount for 2013.

For each of the two series of Securities, there is one Global Security, held by one Holder. Each Global Security requires Argentina to pay its Holder the Payment Amount due on that Security. (Exs. C & E, 1st sentence & ¶ 2(a), 1st sentence.) For 2013, the Payment Amount due on the Securities was approximately $1.3 billion, but Argentina paid nothing. (¶ 24.)

### B.    Plaintiffs Timely Satisfy the Prescription Clause and File the Prior Actions.

The 2013 Payment Amount was due on December 15, 2014. (¶ 162.) A claim had to be made for that payment within five years under the Prescription Clause and suit commenced within six years under the statute of limitations. Plaintiffs did both.

In 2017, Aurelius notified Argentina it "owed the holders of the GDP Warrants a Payment Amount for Reference Year 2013 of approximately $1.3 billion," based on calculation of the payment "due for *all* the GDP Warrants for Reference Year 2013." (Ex. L at 1, 3.)

Between January 14 and December 11, 2019, Plaintiffs other than the Romano Plaintiffs commenced the Prior Actions, each asserting Argentina failed to pay the full Payment Amount of approximately $1.3 billion owed on the Securities.[1] The Romano Plaintiffs timely made a claim satisfying the Prescription Clause on November 4, 2019 and filed their Prior Action on December 10, 2020. *Ape Group*, 2022 WL 463309, at *1, 3.

---

[1] *See Adona* Compl. ¶ 15 ("the GDP Warrants require Argentina to pay … USD $1,320,255,073.65 to holders of the GDP Warrants"); *Aurelius* Compl. ¶ 5 (similar); *ACP* Compl. ¶ 5 (similar); *683 Capital* Compl. ¶ 12 (similar); *Novoriver* Compl. ¶ 40 (similar).

4899-1839-9651.1

In April 2019 (within the prescription and limitations periods), Argentina moved to dismiss without mentioning the NAC.  The motion was granted on other grounds, with leave to amend.  *Aurelius I*, 2020 WL 70348, at *8.

In 2020 (still within the limitations period), after Plaintiffs filed amended complaints, Argentina filed a second motion to dismiss, again without mentioning the NAC.  The Court denied that motion, concluding Plaintiffs stated claims for breach of the Modifications Provision and the implied covenant of good faith and fair dealing.  *Aurelius II*, 2021 WL 1177465, at *9-12.

In 2023 (years after the limitations period had run), Argentina finally raised the NAC on summary judgment.  In 2024, the Court remarked that Argentina's late invocation of the NAC was "curious to say the least," but granted Argentina summary judgment on that ground and declined to reach the "merits of Plaintiffs' breach of contract claims."  *Aurelius III*, 728 F. Supp. 3d at 284 n.11, 290.  In 2025, the Second Circuit affirmed, and likewise declined "to resolve the merits of [Plaintiffs'] claims."  *Aurelius IV*, 2025 WL 1949968, at *4.

C.      **Plaintiffs Comply with the No-Action Clause.**

The NAC authorizes any Holder to sue if five conditions are met:

(i)      such Holder gave the Trustee written notice of a continuing default;

(ii)     the Holders of at least 25% of the Outstanding Securities requested that the Trustee sue;

(iii)    such Holder or Holders provided the Trustee reasonable indemnity;

(iv)    the Trustee failed to sue within 60 days thereafter; and

(v)     the Trustee received no direction inconsistent with the request.

While the NAC refers to "Holder(s)" (*i.e.*, the registered holder(s)), the Indenture and the Global Securities each expressly acknowledge "the right of any beneficial owner" (like

4

Plaintiffs) to pursue the remedies of a Holder (the "**Acknowledgement Provision**").  (Ex. B, § 4.8; Ex. C, ¶ 11; Ex. E, ¶ 9.)

All NAC conditions were satisfied before Plaintiffs filed this action.  Plaintiffs sent the Trustee notices of default.  (Exs. G, H, I.)  Beneficial owners of over 25% of each series, including Plaintiffs, requested that the Trustee sue Argentina and offered reasonable indemnity.  (Exs. J-K.)  The Trustee failed to sue within 60 days after the requests and has not received any direction inconsistent with the requests.  (¶¶ 56-57.)

### D.     Plaintiffs Timely Commence and Serve this Action.

The Second Circuit issued its mandate in *Aurelius IV* on August 29, 2025.  (¶ 5.) Within six months and in accordance with the Stipulation (Ex. A), Plaintiffs commenced this action on January 14, 2026 and served Argentina on January 15, 2026.  (Dkt. Nos. 1 & 8.)

## ARGUMENT

Point I explains how Plaintiffs have complied with the express terms of the contract and statute.  Point II then addresses Argentina's arguments.

## I.

## UNDER THE PLAIN LANGUAGE OF THE CONTRACT AND CPLR 205(a), PLAINTIFFS HAVE THE RIGHT TO BRING THIS ACTION NOW.

### A.     The Securities' Plain Terms Expressly Authorize Plaintiffs as Beneficial Owners to Enforce Argentina's Obligations.

Each Global Security obligates Argentina to perform specified calculations to determine whether the payment conditions were met and, if so, the Payment Amount (Exs. C & E, ¶¶ 1(e), 2(b)); to comply with the Modifications Provision (Ex. C, ¶ 22; Ex. E, ¶ 20); and, if the payment conditions were met, to pay the Payment Amount (Exs. C & E, 1st sentence & ¶ 2(a), 1st sentence.)  These obligations are owed to the Holders (*i.e.*, the registered holders),

and the Payment Amount is to be provided to the Trustee for transmittal to the Holders (*id*., ¶ 2(a), 3rd sentence).

Subject to satisfaction of the NAC's conditions, the NAC authorizes *any* Holder of *any* portion of the Securities to bring suit "to enforce any right under … the Securities…for the equal, ratable, and common benefit of *all* Holders of the Securities" (Ex. C, ¶ 11). Thus, when a Holder sues pursuant to the NAC, that Holder may seek to enforce Argentina's obligations that run to all Holders.

A beneficial owner of a portion of the Securities (such as Plaintiffs here) has the same remedial rights that a Holder has, including the right to sue pursuant to the NAC to enforce Argentina's obligations that run to all Holders. The Acknowledgement Provision "expressly acknowledges" "the right of *any* beneficial owner of Securities to pursue such remedies with respect to the portion of [the] Global Security that represents the beneficial owner's interest in [the] Security as if Certificated Securities had been issued to such beneficial owner." (*Id*.) Indeed, according to Argentina, Plaintiffs can only sue pursuant to the NAC.

### B.    Under the Plain Language of CPLR 205(a), this Action Is Timely.

CPLR 205(a) tolls limitation periods if a "timely commenced" action was terminated on curable, non-merits grounds and, within six months, the plaintiff commences a new action upon the "same transaction or occurrence or series of transactions or occurrences." This savings statute serves a "vitally important remedial function" where plaintiffs who timely sued "suffer … a dismissal as the result of some remediable deficiency" after the limitations period has run. *Hakala v. Deutsche Bank AG*, 343 F.3d 111, 115 (2d Cir. 2003). "The purpose of § 205(a) is to avert unintended and capricious unfairness," *id*., and its "broad and liberal purpose … is not to be frittered away by any narrow construction," *Morris Invrs., Inc. v. Comm'r*

6

*of Fin. of City of N.Y.*, 69 N.Y. 2d 933, 935 (1987) (quoting *Gaines v. City of N.Y.,* 215 N.Y. 533, 539 (1915) (Cardozo, J.)).

Here, all requirements of CPLR 205(a) are met.  Argentina does not dispute that (1) this action is upon "the same transaction or occurrence or series of transactions or occurrences" as the Prior Actions;[2] (2) the named plaintiffs in this action were the named plaintiffs in the Prior Actions; (3) the Prior Actions were "timely commenced" within the six-year limitations period for contract actions, CPLR 213(2); (4) the Prior Actions were not terminated voluntarily, for lack of personal jurisdiction, for failure to prosecute, or by a final judgment on the merits; (5) this action would have been timely under CPLR 213(2) if it had been commenced when the Prior Actions were commenced; and (6) this action was commenced, and service effected, within six months after the Prior Actions' termination.  Because all requirements for tolling under CPLR 205(a) are met, the claims in this action are timely.

This action satisfies CPLR 205(a) regardless whether Plaintiffs seek greater monetary relief than before.  By legislative design, a new action permitted by CPLR 205(a) may assert different causes of action or seek different relief if they arise from "the same *transaction or occurrence or series of transactions or occurrences*" as the first.  Historically, CPLR 205(a) had provided that the new action must be brought upon "the same *cause of action*," but in 1978, the legislature substituted the current language to conform it to "a longstanding body of New York case law holding that § 205(a) and its predecessors are not limited to invocation in

---

[2] Namely, Argentina's issuance of the Securities, failure to publish 2013 Actual Real GDP in constant 1993 prices, calculation of the 2013 Payment Amount without the Adjustment Fraction or the requisite consent to such change, and failure to pay the Payment Amount due for 2013 of $1.3 billion.  *Compare* ¶¶ 69-155, *with Aurelius* Am. Compl. ¶¶ 23-65; *Novoriver* Compl. ¶¶ 16-56; *ACP* Am. Compl. ¶¶ 23-65; *683 Capital* Compl. ¶¶ 21-113; *Adona* Compl. ¶¶ 32-107; *Ape* Compl. ¶¶ 6-29.

7

instances in which a plaintiff's second suit is based upon an identical cause of action." *Harris v. U.S. Liab. Ins. Co.,* 746 F.2d 152, 153-54 (2d Cir. 1984).

For example, in *Harris*, the plaintiff sued her insurer for a declaratory judgment that she had cooperated with its investigation of her claim. After the action was dismissed on non-merits grounds, the insured brought a new action to recover under the policy. The district court held that the second action was time-barred under a one-year limitations period in the policy and that CPLR 205(a) did not apply because it "involved a different cause of action than that of the first." *Harris*, 746 F.2d at 153. The Second Circuit reversed, because the second action "arose out of the same occurrences associated with the loss," even though the first sought declaratory relief while the second sought monetary relief. *Id*. at 154. The Second Circuit held that saving the second action "comports well with the underlying philosophy of the New York rule," which is "properly concerned," not with "'the form of relief originally requested,' but with whether the defending party was fairly notified of the subject matter of the dispute within the limitations period." *Id*. Thus, in *Harris*, the Second Circuit upheld a CPLR 205(a) action that exposed the defendant to damages for the first time.

Similarly, in *Dorchester Financial Securities Inc. v. Banco BRJ, S.A.*, the terminated action sought damages for breach of a letter of credit. 2014 WL 684831 (S.D.N.Y. Feb. 21, 2014). The subsequent action added a new claim that the plaintiff was also damaged by the defendant's breach of a separate agreement to provide the letter of credit. Judge Wood held the new claim was saved by CPLR 205(a), finding it was "sufficiently factually related to the letter of credit itself to be deemed 'the same transaction or occurrence'" and explaining that the "transaction or occurrence requirement does not preclude a second suit simply because it asserts a different cause of action than the first." *Id*. at \*5 (cleaned up).

Other decisions likewise confirm that the cause of action and relief sought in the new suit need not be identical for tolling under CPLR 205(a) to apply.[3]

That result aligns with CPLR 203(f), which deems otherwise untimely claims in an amended pleading to relate back if the initial pleading gave "notice of *the transactions, occurrences, or series of transactions or occurrences*" alleged in the amended pleading. The courts consistently construe those statutory terms to permit different "causes of action" or a "new legal theory of recovery," even if "a defendant is exposed to greater liability."[4]

Although the causes of action need not be the same, they are here: breaches of contract and breach of the implied covenant of good faith and fair dealing, all alleging the same specific breaches as before. Only the amount of the monetary relief sought differs. But nothing in CPLR 205(a) requires that the relief sought be the same in amount or form. The savings statute is not "properly concerned" with "the form of relief originally requested." *Harris,* 746 F.2d at 154. This action may seek different relief upon the "same … transactions or occurrences" alleged in the Prior Actions, which "fairly notified [Argentina] of the subject matter of the dispute within the limitations period," *id.*, including its $1.3 billion payment obligation.

---

[3] *See Utica Sheet Metal Corp. v. Myers-Laine Corp.*, 45 A.D.2d 116, 118 (3d Dep't 1974) (CPLR 205(a) permitted new claim seeking "different form of relief"); *Genova v. Madani*, 283 A.D.2d 860, 861 (3d Dep't 2001) ("no identity of cause of action is required" by CPLR 205(a)); *Baker v. Latham Sparrowbrush Assocs.*, 808 F. Supp. 981, 991 (S.D.N.Y. 1992) ("The prior action need not be the same cause of action in order to invoke the tolling principle of § 205(a) as long as it is based on the same transaction or occurrence, such that 'the defending party was fairly notified of the subject of the dispute within the limitations period.'").

[4] *See Lazar v. Mor*, 235 A.D.3d 408, 409 (1st Dep't 2025) (CPLR 203(f) "does not require an identity of the causes of action alleged"); *Randolph v. Fox*, 230 A.D.3d 1173, 1174 (2d Dep't 2024) ("A new legal theory of recovery may be asserted, so long as it arises from the same transactions alleged in the original complaint."); *O'Halloran v. Met. Transp. Auth.*, 154 A.D.3d 83, 86, 88-89 (1st Dep't 2017) ("salient inquiry" is whether defendant had "notice of the transactions [or] occurrences," and "[p]rejudice does not occur simply because a defendant is exposed to greater liability"); *Caffaro v. Trayna*, 35 N.Y.2d 245, 251 (1974) (permitting new claim even though it would "introduce new aspects on the issue of damages").

That result is consonant with the Rule 8 notice pleading standard, which does "not require a plaintiff to specify the relief sought in the complaint" or "demand a particular form of relief." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 568 F. Supp. 2d 376, 383-84 (S.D.N.Y. 2008). The fact that Plaintiffs did so in the Prior Actions would not have limited the relief to which they were entitled, since "Rule 54(c) … provides that a prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in his pleadings." *Id*. If any suit by beneficial owners must be for the full Payment Amount (as Argentina contends), then since the Prior Actions were brought by beneficial owners and alleged the full Payment Amount was due, *see supra* note 1, Argentina was on notice that it might have to pay the full Payment Amount.

### C. Compliance with the No-Action Clause Can Be and Was Timely Cured After the Limitations Period, Because the NAC Is Only A Procedural Condition Precedent to Suit.

The New York Court of Appeals has repeatedly held that when an action is terminated for failure to meet a procedural condition precedent to suit, CPLR 205(a) permits the plaintiff to cure that non-merits defect after the limitations period has expired.[5] The NAC is such a *procedural* condition precedent to suit because it is a "limitation[] on the remedy for a breach" of Argentina's obligations, not a *substantive* condition precedent that "describe[s] acts or events which must occur before [Argentina] is obliged to perform a promise made pursuant to

---

[5] *DLJ*, 33 N.Y.3d at 80-82 (contract's notice and cure provisions were *procedural*, not *substantive*, conditions precedent to suit, and thus could be cured after limitations had run and before filing CPLR 205(a) action); *Morris Invs.,* 69 N.Y.2d at 934-36 (second petition challenging tax deficiency was timely under CPLR 205(a) where petitioner deposited tax and posted bond after time for challenge expired); *Carrick v. Cent. Gen. Hosp.*, 51 N.Y.2d 242, 251-52 (1980) (second wrongful death action was timely under CPLR 205(a), where plaintiff obtained letters of administration before second suit), *rev'g* 71 A.D.2d 226, 227-28 (2d Dep't 1979) (which had rejected CPLR 205(a)'s application because the letters were not obtained until after limitations period expired).

[the] contract." *DLJ*, 33 N.Y.3d at 80. Satisfaction of the NAC was not required to trigger Argentina's obligation to pay the Payment Amount. Because the NAC is therefore a procedural condition precedent to suit, CPLR 205(a) permitted pre-suit compliance with the NAC to be cured after the limitations period ran, as happened here (*supra* Background § C).

D.    **Plaintiffs "Made" "Claims" for the Full Payment Amount Within the Prescription Period, as this Court Has Construed Those Plain Terms.**

The Prescription Clause provides that "claims" "for amounts due hereunder" are prescribed unless "made" within five years after "such payment first became due." (Ex. C, ¶ 14.) The Prescription Clause is inapplicable to Plaintiffs' claims that Argentina breached the other obligations identified in Count I[6] or the covenant of good faith and fair dealing as alleged in Count II, because none of those is an obligation to make "payment" of an "amount due" under the Securities. Argentina does not argue that Plaintiffs cannot enforce these obligations here and obtain damages or equitable relief.

The only "claim" in this action for an "amount due hereunder"—the claim that Argentina failed to pay the 2013 Payment Amount due on December 15, 2014—was repeatedly "made" well within the prescription period. As this Court has held, under those terms' ordinary meaning, a "claim" is "made" for prescription purposes by the "assertion of a right to payment." *Ape Group*, 2022 WL 463309, at *3. In a 2017 letter to Argentina's Secretary of Finance, Aurelius asserted the Holders' right to payment of the full Payment Amount, and thus "made" the "claim," in the clearest terms possible, stating: "the Republic of Argentina … owed the holders of the GDP Warrants a Payment Amount for Reference Year 2013 of approximately $1.3

---

[6] Namely, Argentina's obligations to calculate the Payment Amount and to determine the payment conditions in accord with the contract, to publish Actual Real GDP in constant 1993 prices, and to comply with the Modifications Provision. *See* ¶¶ 158-61.

11

billion … that was due on December 15, 2014." (Ex. L at 1.) The "claim" for the full Payment Amount was then "made" again in each of the 2019 complaints. *See supra* note 1.

**II.**

**ARGENTINA'S ARGUMENTS ARE CONTRARY TO
THE TERMS OF THE CONTRACT AND CPLR 205(a).**

A.    **Plaintiffs Are Timely Asserting Their Own Claims,
     Not the Claims of Other Beneficial Owners.**

**1.  The timeliness of other beneficial owners' claims is irrelevant.**

As shown above (Point I.B), Argentina does not (and cannot) dispute that this action meets all requirements of CPLR 205(a), thus making this action timely. Instead, Argentina argues that, by seeking the full Payment Amount, Plaintiffs are asserting time-barred "representative claims" "belonging to others," which cannot be saved by CPLR 205(a) because those other beneficial owners were not plaintiffs in the Prior Actions. (RB 6-8, 10-12.)[7]

Plaintiffs' pursuit of a remedy for the Payment Amount is not, as Argentina portrays it, the aggregate of separate claims by beneficial owners for their respective shares of the Payment Amount. Rather, as explained above (Point I.A), Plaintiffs are exercising their own rights—indeed, what Argentina contends have always been Plaintiffs' *only* remedial rights—to sue under the NAC to "enforce a right … under the Securities" (including Argentina's obligation to pay the entire Payment Amount to the Trustee for transmittal to all Holders) and to seek the contractually agreed form of relief (namely, relief "for the … benefit of all Holders"). When Plaintiffs do so, they are suing to enforce that payment obligation pursuant to their own

---

[7] Argentina does not argue that inaction by non-party beneficial owners should limit Plaintiffs' ability to pursue claims for damages based on multiple breaches other than failure to pay the Payment Amount, such as breach of the Modifications Provision.

12

4899-1839-9651.1

enforcement rights under the contract's terms; they are not suing to enforce payment obligations to, or pursuing the remedial rights of, other beneficial owners.

Nor does the fact that the NAC contemplates relief for the benefit of all Holders mean that beneficial owners are "representing" anyone else when they pursue remedies under the NAC, or that they are converted into different legal persons when they do. When the parties understood someone to be acting in a representative capacity, they said so, *see* Indenture § 4.4(e) ("the Trustee shall be held to *represent* all the Holders" (emphasis added)), and then devoted all 13 pages of Indenture Article Five and myriad other provisions to addressing the representative's duties, responsibilities, immunities, compensation, indemnification, and reimbursement, *see*, *e.g.*, *id*. §§ 4.4(c)-(d), 4.5 & art. V. There is nothing comparable for Holders or beneficial owners anywhere in the contract. Nor could a Holder or beneficial owner take on the responsibilities of a Trustee without being formally appointed as a co-trustee, which does not happen simply by virtue of the Trustee failing to act on a request under the NAC. *See id.* § 5.12.

Because Plaintiffs are pursuing their own remedy to enforce Argentina's obligations under the contract, including to pay the Payment Amount, it is irrelevant whether other beneficial owners timely pursued their remedies. Even if other beneficial owners are time-barred from pursuing their remedies, Plaintiffs are not.[8] And the fact that other potential plaintiffs did not timely pursue their remedies does not mean the right to the Payment Amount was extinguished. Expiration of the limitations period may "bar [a] remedy," but it does "not extinguish the underlying right." *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 55 (1999). Thus, other Holders' or beneficial owners' failure to timely pursue their remedies does not

---

[8] Other beneficial owners' remedies are not exclusive of Plaintiffs' remedies (Indenture § 4.10(a)), and other beneficial owners' failure to pursue their remedies does not impair Plaintiffs' remedies (*id*. § 4.10(b)).

impair Plaintiffs' remedy, much less the underlying right to the Payment Amount—just as Plaintiffs' remedy wouldn't have been impaired if this suit had been brought in 2019 and no other owners ever sued.

Argentina does not (and cannot) articulate how Plaintiffs here are anything other than the same Plaintiffs who commenced the Prior Actions. And, according to Argentina, in the Prior Actions and now, Plaintiffs could and can only sue pursuant to the NAC. What few cases Argentina cites are irrelevant because none involved a plaintiff suing on the same contractual remedies it always had. Instead, Argentina's cases all involved the addition of new plaintiffs or an overt change in the entities serving as plaintiffs (RB 8, 10-12).

For example, in *In re Bennett Funding Group, Inc. Securities Litigation*, 194 F.R.D. 98 (S.D.N.Y. 2000) (cited at RB 8), the plaintiffs belatedly sought leave to add class allegations and thus new plaintiffs. In contrast to a class action where the claims of all class members are asserted for them by court-approved class representatives, here Plaintiffs are pursuing their own express contractual rights to enforce Argentina's obligations, not asserting claims of other beneficial owners. Moreover, *Bennett*'s consideration of those plaintiffs' delay under Rule 15(a) has no application to CPLR 205(a) and would not help Argentina given its own inexcusable delay in raising the NAC.

Likewise, *Reliance Ins. Co. v. PolyVision Corp.* (cited at RB 10), is inapposite because a parent corporation tried to bring a new action after its subsidiary's action was dismissed. 9 N.Y.3d 52, 57 (2007). In *Craft EM CLO 2006-1 Ltd. v. Deutsche Bank AG*, the plaintiff brought a new action as an assignee of another person's claim. 178 A.D.3d 552 (1st Dep't 2019). And in *ACE Securities Corp. v. DB Structured Products, Inc.*, a new action was brought by a different plaintiff with different contractual rights than the plaintiffs in the prior

14

action.  38 N.Y.3d 643, 654 (2022).  Here, Plaintiffs are the same plaintiffs who timely filed the

Prior Actions, and they are pursuing the same contractual remedies they always had.

### 2. As this Court has construed the Prescription Clause, "making" a "claim" does not require a "specific demand for relief."

Argentina contends that even though the 2017 Aurelius letter and the 2019

complaints all asserted that Argentina *owed* the Payment Amount (*see supra* Point I.D), they did

not satisfy the Prescription Clause because they did not include a "specific demand for relief"

that Argentina *pay* the Payment Amount (RB 8-9).  Argentina thus tries to relitigate *Ape Group*,

where this Court held the Prescription Clause requires only an "assertion of a right to payment."

2022 WL 463309, at *3.  The Prescription Clause is a "mere notice provision," which can be

satisfied by something as informal as an email requesting a tolling agreement.  *Id.* at *1, 3.

*Windham Solid Waste Management District v. National Casualty Co.*, 146 F.3d

131 (2d Cir. 1998), cited by Argentina (RB 8-9), applied a different definition of "claim" to an

insurance policy under Vermont law, but even under that inapposite standard, the 2017 letter and

2019 complaints sufficed.  In *Windham*, the letters at issue did not identify the full extent of the

alleged violations or remedial action sought, yet the court held they sufficed to make a "claim."

*Id.* at 135.  Plaintiffs did better than *Windham*—they notified Argentina it owed the full Payment

Amount.  Because Argentina had full notice of that claim within the prescription period (and has

already litigated that claim through to the completion of discovery in the Prior Actions), there is

no affront to "finality 'and repose'" from "stale claims" (RB 9-10).

Nor does the Prescription Clause require "each holder" to "individually assert his

or her own right to payment" (RB 9).  The Prescription Clause does not specify *by whom* a

"claim" must be "made," and there is no reason why one beneficial owner cannot sufficiently put

Argentina on notice of the full Payment Amount due to all Holders.  Indeed, the claims that

15

4899-1839-9651.1

Plaintiffs made in 2017 and 2019 were explicitly predicated on the full Payment Amount being due. It is incongruous for Argentina to contend that a beneficial owner may only sue under the NAC for the full Payment Amount, but cannot give notice under the Prescription Clause that such amount is due. Argentina's reliance on *Warth v. Seldin*, 422 U.S. 490 (1975), is misplaced. That case addressed Article III standing to challenge municipal zoning restrictions; it did not construe a contract provision like the Prescription Clause.

Finally, in addition to the 2017 letter and 2019 complaints "making" a "claim" for the Payment Amount, the filing of the Complaint herein did too. Whether the Prescription Clause is treated as a "contractual limitations period" or a "condition precedent" (as Argentina variously contends at RB 8 & 18), CPLR 205(a) tolled the five-year prescription period for up to six months after the Prior Actions terminated. *See Harris*, 746 F.2d at 153-54 (tolling one-year contractual limitations period under CPLR 205(a); *supra* note 5 (conditions precedent to suit may be fulfilled prior to timely commenced CPLR 205(a) action). Thus, Plaintiffs' Complaint herein also timely "made" a "claim" for the Payment Amount.

### 3. As an alternative remedy, Plaintiffs should recover at least the portion of the Payment Amount or damages related to their beneficial interests.

Even if Argentina were correct that recovery of the portion of the Payment Amount or damages attributable to other beneficial owners is time-barred, Plaintiffs should at least obtain their share. In accord with the NAC, such relief would be for the equal, ratable and common benefit of all beneficial owners taking into account their respective preserved rights (on Argentina's theory). Where some beneficial owners have a right and others do not, the NAC does not vitiate that right and bestow a windfall on Argentina.

There are numerous scenarios under the contract where some beneficial owners may have a right to payment, but others don't. For example, some but not all might be entitled to

16

Additional Amounts (*see* Ex. C, ¶ 3) or might settle their claims or satisfy them by exercising set-off rights. Indeed, some beneficial owners—such as instrumentalities of the Republic or banks regulated by it—might waive their right to application of the Adjustment Fraction or waive payment entirely.[9] Nothing in the NAC's language precludes suit to enforce the rights of beneficial owners who have them if other beneficial owners do not have them. Rather, such a suit would be permissible because it would be for the equal, ratable and common benefit of all beneficial owners taking into account their respective rights. Likewise, if (contrary to Plaintiffs' view) other beneficial owners have lost their right to recover for Argentina's breaches, the NAC does not preclude relief for just Plaintiffs.

### B. The No-Action Clause Does Not Require that the Trustee Receive a Request to Sue Within the Limitations Period.

As shown above (Point I.C), the NAC is a procedural condition precedent to suit that can be cured after the limitations period has run, but Argentina contends that it has not been cured because the Trustee did not receive a request to sue before the limitations period ran. It is well-established, however, that "no-action clauses are to be construed strictly and thus read narrowly," *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 560 (2014); *Aurelius III*, 728 F. Supp. 3d at 285 (same), and that courts should not "interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *ACE Securities Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 597 (2015) (quoting *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004)). Argentina's contention

---

[9] Yet another scenario under the Indenture and NAC where payment would not be due to all beneficial owners would be where only some had exercised put-back rights (*see* Ex. B, § 2.1(c)(viii)), albeit that such scenario is not applicable to the Securities here.

17

violates these principles, because it "reads into the No Action Clause a requirement that is not there."[10]

By its express terms, the NAC does not condition the right to sue on whether the request to the Trustee was made within the statute of limitations, nor on *why* the Trustee failed to sue. (*See* Ex. C, ¶ 11.) If the parties intended such a condition, they could have added language saying so. But they did not, and no such additional condition should be read into the NAC. *Quadrant*, 23 N.Y.3d at 560 ("[I]f the parties to a contract omit terms … the inescapable conclusion is that the parties intended the omission").[11]

Nor is there any frustration of purpose here. None of Argentina's "frustration of purpose" cases (*U.S. Bank v. Barclays Bank*; *Rex Medical*; *Allstate*; *Azeem*; and *Dyno-Bite*) (RB 10, 14-15) construes a no-action clause, and a no-action clause "is not a complete bar to any and all security holder suits." *Quadrant*, 23 N.Y.3d at 566. In particular, a "no-action clause … cannot serve as an outright prohibition on a suit filed by a securityholder … where the Trustee is without authorization to act." *Id*. at 567. "[T]herefore, *the purpose of the … no-action clause is not frustrated where the Trustee is without authority to act*." *Id.* (emphasis added).

To the contrary, the "primary purpose" of a no-action clause to deter "frivolous," "unpopular" "strike suits" by "lone rangers," *Quadrant*, 23 N.Y.3d at 565, 566, is entirely fulfilled here. Plaintiffs are acting on requests made by holders of at least 25% of each series of

---

[10] *Matter of Trusts Established under the Pooling & Servicing Agreements Relating to the Wachovia Bank Com. Mortg. Tr. Com. Mortg. Pass-Through Certificates, Series 2007-C30*, 375 F. Supp. 3d 441, 450 (S.D.N.Y. 2019).

[11] Argentina also says the July 25, 2024 request did not license Plaintiffs to re-file the requested suit after their previously filed CPLR 205(a) suit was dismissed without prejudice as premature. (RB 13.) Argentina thus reads into the NAC yet another limitation which does not appear in the text—namely, that a holder may make only one attempt to sue per request—and which would not invalidate the later November 12, 2025 request regardless.

Securities.[12]  Far from being frivolous, English courts have already reached a final judgment finding Argentina in breach over the 2013 Payment Amount for exactly the reasons stated in the Complaint.  (¶¶ 26-27.)  These suits are "unpopular" only with Argentina, which for 12 years has wrongfully avoided making the agreed payments on the Securities.

### C. Argentina's Other "Threshold" Arguments Fail.

**1. No assignment of claims is necessary because the contract "expressly acknowledges the right of any beneficial owner" to sue.**

Argentina argues that Plaintiffs have not alleged standing to bring claims that accrued before they purchased their beneficial interests, because they have not alleged that each transfer of interests up to and including their purchases came with an assignment of claims from beneficial owner(s) who held on the 2013 Payment Date.  Argentina's argument fails, because it again ignores the contract's plain language.[13]

As beneficial owners, Plaintiffs are entitled to and are pursuing the same remedies that the Holder could pursue.  Thus, what matters is whether the Holder could pursue the remedies Plaintiffs pursue here.  Because the Holder of each series has been the same since the time of Argentina's breach (in fact, ever since issuance), the Holder could pursue the remedies sought in this action, and no question of an assignment of claims upon transfer can even arise.

---

[12] *Cf. Wachovia*, 375 F. Supp. 3d at 451 (refusing to read requirement into no-action clause that all requesting holders be plaintiffs in suit, and noting such "plain reading" of agreement served "the general purpose of No Action Clauses," because plaintiff holders "would still need to muster a similarly-minded group that … holds at least 25% … to initiate the process through written notification to the Trustee" and they are "only authorized to bring 'such action, suit or proceeding' that was initiated by the larger group").

[13] Argentina's argument also fails, as a factual matter, as to the Romano Plaintiffs and Novoriver, because they have continuously held beneficial interests in the Securities since before the Payment Date.  *See* Def.'s 56.1 Resp. ¶ 15; Pls.' 56.1 Suppl. Resp. ¶ 155 in Prior Actions.

Moreover, the Acknowledgement Provision expressly grants "*any* beneficial owner" the right to pursue any remedy of "*any* Holder" under the Securities. Nothing in the Acknowledgement Provision's plain language limits "the right of *any* beneficial owner" to sue to beneficial owners who held their interests on the date of the breach. In the absence of any words expressing such a limitation, none should be read into the agreements. *See ACE*, 25 N.Y.3d at 597; *Quadrant*, 23 N.Y.3d at 559-60, 567.

In a case directly on point, *R.A. Mackie & Co. v. PetroCorp Inc.*, 329 F. Supp. 2d 477 (S.D.N.Y. 2004), Judge Koeltl held that an express provision in a warrant agreement gave current holders the right to sue on a previously accrued claim, in the absence of any assignment from a holder who held when the claim accrued. The provision reserved to "the parties hereto *and the holders of the Warrant Certificates* any right, remedy, or claim under or by reason of this Agreement." *Id*. at 508 (emphasis added). Judge Koeltl concluded that provision "authorizes holders of the Warrants, *without limitation*, to maintain a legal proceeding for breach of the agreement," and nothing in it "prevents the plaintiffs from bringing claims against [the issuer] based on Warrants that were purchased after the date of the breach." *Id*. (emphasis added).[14]

Similarly, the Acknowledgement Provision authorizes "*any* beneficial owner," without limitation, to pursue any remedy of a Holder; nothing in its language prevents current beneficial owners from suing Argentina based on interests purchased after the breach. None of Argentina's cases (*Phoenix*, *Breitman*, *Royal Park*, *BlackRock*, *Semi-Tech*, and *Racepoint*) (RB 15-17) addresses an express contractual right to sue, like those here and in *Mackie*.

---

[14] *Mackie* noted that UCC § 8-302—which provides a purchaser "acquires all rights in the security that the transferor had or had power to transfer"—permitted the court to look to the warrant agreement's enforcement provisions. Section 8-302 applies here because the Acknowledgement Provision treats beneficial owners as if certificated securities had been issued to them, but regardless, the contract's terms always govern.

### 2. The Prescription Clause does not bar any relief sought by WASO.

Argentina contends the Prescription Clause bars recovery based on WASO's holdings added to the Supplemental Amended Complaint it filed after expiration of the prescription period but before expiration of the limitations period. Not so.

*First,* WASO timely "made" a "claim" for the full Payment Amount, including the portion due with respect to the additional holdings, when it filed its 2019 complaint notifying Argentina that it had breached and owed USD $1,320,255,073.65 to holders of the Securities. *See supra* note 1 & Point I.D. *Second,* the Prescription Clause does not apply to claims for *damages* from Argentina's breaches, including breaches of the Modifications Provision and the covenant of good faith and fair dealing. *See supra* Point I.D; *Adona* Am. Compl. ¶¶ 77, 108, 122, 128-129. *Third*, having satisfied the NAC and CPLR 205(a), WASO can independently seek any remedies available to the Holder, including for the Payment Amount or other damages. *See supra* Points I.A-C.

Argentina's argument also fails because, as this Court previously ruled, the Prescription Clause works "in tandem" with the "prescription period" in Global Security ¶ 2(e), which addresses the return to Argentina of "unclaimed" funds deposited with the Trustee. *Ape Group*, 2022 WL 463309, at *3. Paragraph 2(e) provides that "monies … remaining unclaimed after five years" may still be recovered *from Argentina* "thereafter." *Id*. Reading the contract as a whole (as it must be), the Prescription Clause cannot be construed to extinguish Argentina's obligation after five years when Paragraph 2(e) expressly contemplates there can still be a "payment to which [a] Holder may be entitled" "thereafter" (Ex. C, ¶ 2(e)).

Finally, although WASO need not rely on the relation-back doctrine, its Supplemental Amended Complaint only served to update WASO's holdings and bring the pleading "up to date." *Kemper Ins. Cos. v. United States*, 2004 WL 1811390, at *4 (W.D.N.Y.

21

Aug. 13, 2004).  Contrary to Argentina (RB 17-18), no additional claim has been made.

Argentina is not prejudiced by allowing the amended holdings, and increased damages are not a

basis for declining to apply relation back.  *See supra* note 4.[15]

## CONCLUSION

Argentina's motion to dismiss should be denied.

Dated: New York, New York
April 20, 2026

Respectfully submitted,

FRIEDMAN KAPLAN SEILER
  ADELMAN & ROBBINS LLP

By:    *s/ Edward A. Friedman*
       Edward A. Friedman
       Daniel B. Rapport
       Jeffrey C. Fourmaux
       Michael S. Palmieri

7 Times Square
New York, New York 10036
(212) 833-1100
efriedman@fklaw.com
drapport@fklaw.com
jfourmaux@fklaw.com
mpalmieri@fklaw.com

*Attorneys for Plaintiffs Aurelius Capital
Master, Ltd. and ACP Master, Ltd.*

---

[15] Contrary to Argentina (RB 18 n.6), the Romano Plaintiffs also satisfied the Prescription
Clause, as this Court already held.  *Ape Group,* 2022 WL 463309, at *3.

22

BLEICHMAR FONTI & AULD LLP

By:    *s/ Javier Bleichmar*
       Javier Bleichmar
       Evan A. Kubota

300 Park Avenue, Suite 1301
New York, New York 10022
(212) 789-1340
jbleichmar@bfalaw.com
ekubota@bfalaw.com

*Attorneys for Plaintiff Novoriver S.A.*

PERKINS COIE LLP

By:    *s/ Matthew M. Ricciardi*
       Matthew M. Riccardi
       H. Rowan Gaither IV

1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
(212) 262-6900
MRiccardi@perkinscoie.com
RGaither@perkinscoie.com

*Attorneys for Plaintiff 683 Capital Partners, LP*

LATHAM & WATKINS LLP

By:    *s/ Matthew S. Salerno*
       Matthew S. Salerno

1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200
matthew.salerno@lw.com

*Attorneys for Plaintiffs Adona LLC; Egoz I LLC; Egoz II LLC; Mastergen, LLC; Erythrina, LLC; AP 2016 1, LLC; AP 2014 3A, LLC; AP 2014 2, LLC; and WASO Holding Corporation*

23

LAW OFFICES OF ERIC J. GRANNIS

By:    *s/ Eric J. Grannis*
         Eric J. Grannis

11 Broadway, Suite 615
New York, New York 10004
(212) 903-1025
egrannis@grannislaw.com

*Attorneys for Plaintiffs Ape Group SpA;*
*Romano Consulting SpA; Icaro SRL;*
*and Elazar Romano*

24

25

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing memorandum of law contains 6,999 words in compliance with S.D.N.Y. Local Civil Rule 7.1(c) and Rule 2.B of the Individual Practices of Judge Loretta A. Preska, dated April 1, 2025.

*s/ Edward A. Friedman*
Edward A. Friedman

4899-1839-9651.1